DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

RICHARD EWENSTEIN (CABN 294649)
Assistant United States Attorney

      450 Golden Gate Avenue, Box 36055
      San Francisco, California 94102-3495
      Telephone: (415) 436-6842
      FAX: (415) 436-7027
      richard.ewenstein@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **CASE NO.** CR-20-00068-CRB |
| Plaintiff, | **GOVERNMENT'S RESPONSE TO COURT'S** |
| v. | **ORDER FOR INFORMATION** |
| RAYA MAN, | |
| Defendant. | |

# INTRODUCTION

The government files this response to the Court's April 15, 2020 order that the government provide its position regarding (1) "whether the risk of contracting COVID-19 at Santa Rita Jail is greater than the risk if the inmate [Defendant Raya Man] were allowed to Shelter-at-Home"; and (2) "the number of motions for release that have been filed during the public health crisis where the defendant was previously detained after a contested detention hearing, and the number of such motions in which the USA has agreed to release."  Dkt. No. 25.

Without knowing whether Defendant would shelter-in-place as ordered if released, the government cannot determine the Defendant's relative risk of contracting COVID-19 in Santa Rita Jail versus to being released.  There are cases of COVID-19 in Santa Rita Jail, and social distancing and some other recommended public health practices are difficult to implement in an institutional setting.  Nonetheless, given Defendant's long history of dangerous and violent felonies and failures to abide by court orders, there is no indication that this Defendant would abide by shelter-at-home orders if given the opportunity to do so.

Accordingly, the government did not rely on the defendant's relative risk of contracting COVID-19 in arguing for Defendant's continued detention.  Instead, the government argued and continues to argue that the dangerousness to the community posed by Defendant's release significantly outweighs any comparative risk of defendant contracting the infection at Santa Rita Jail versus sheltering-in-place.  Although an individual who strictly abided by shelter-in-place and social distancing orders would likely be at lower risk of COVID-19 infection than if residing in Santa Rita Jail or any communal living environment, whether and to what extent a defendant complied with shelter-in-place directives would determine that defendant's relative risk.

Pursuant to the Court's order, the government surveyed cases in the district involving motions for release that have been filed during the public health crisis in which the defendant was previously detained after a contested detention hearing.  The government's survey found 30 such cases.  The government moved for detention in 29 of those cases based on the defendant's dangerousness to the community and/or risk of flight.  The Court ordered nineteen of the defendants in such cases detained following a reopened hearing.  As is required by the Bail Reform Act, the government's position in each

of these cases was determined by application of the Act's factors to the individual defendant. The government has a duty to protect the public, not to focus exclusively on the needs of the defendant, and the positions it takes are with those considerations in mind. These positions are often at odds with those taken by the defense, who have a similar duty to advocate fiercely for their individual clients. The government greatly respects this process and the ultimate role of the court in determining whether to detain or release a defendant.

## I.   THE DEFENDANT'S RELATIVE RISK OF COVID-19 INFECTION

### A.   Background

The Bail Reform Act (the "Act") requires the government to make an individualized determination as to whether to seek pretrial release or detention for each defendant in every case. In analyzing whether to advocate for an individual defendant's release or detention, the Act commands the government to consider the safety of the community and therefore the risk that the defendant poses to community safety if released. *See* 18 U.S.C. § 3142(f). Under the Act, the question is whether "any condition or combination of conditions" can "reasonably assure … the safety of any other person and the community." *Id.*

Defendant presents an extraordinary risk of danger to the community. Prior to the instant case, Defendant had been convicted of four violent felonies on three separate dates, including assault with a firearm, assault with a deadly weapon, and assault with force likely to cause great bodily injury. In the instant case, Defendant is alleged to have escalated a verbal argument by leaving the scene to retrieve a handgun, which he is prohibited from possessing as a convicted felon. Defendant returned to the scene (a crowded bar in San Francisco's Tenderloin neighborhood), pointed the firearm at the bar's proprietor, and threatened him. Defendant then went to another bar next door and discarded the loaded pistol in the wastebasket of a public restroom, furthering endangering the public by leaving a loaded firearm in an easily accessible place. At the initial detention hearing, the Court ordered Defendant detained because "no condition or combination of conditions will reasonably assure the safety of the community." Dkt. 16, at 2. The Court emphasized "that the defendant has, several times, been convicted of felony offenses involving violence." *Id.* at 3.

The Act also requires consideration of the defendant's physical and mental health. The relative

risk of infection from COVID-19 to a particular inmate incarcerated in versus released from Santa Rita Jail depends on a number of case-specific factors related to conditions within Santa Rita Jail and the defendant's likely conduct if released to shelter-in-place.  A defendant's relative risk of infection also depends on whether he and others with whom he lives and interacts obey the shelter-in-place order.  Accordingly, although institutional living tends to pose a greater risk of infection relative to sheltering-in-place in a private home, the relative risk is also contingent on additional factors.

**B.    Factors Affecting Likelihood of Infection Within Santa Rita Jail**

As a general matter, congregate environments such as Santa Rita Jail present a heightened potential for COVID-19 to spread once introduced.  *See* https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html.  COVID-19 has been present in Santa Rita Jail since at least April 4, 2020.  In total, as of this filing, Santa Rita Jail has conducted a total of 87 tests yielding 50 negative, 31 positive, and 6 pending results as of April 20, 2020.  *See* https://www.alamedacountysheriff.org/admin_covid19.php (last visited April 20, 2020).  The inmate population is currently 1,763.  *Id.*[1]

Santa Rita Jail, as the court knows from prior filings, has numerous practices and procedures in place to prevent the spread of COVID-19.  Santa Rita Jail has expertise and experience to mitigate the threat of COVID-19 infection spreading to Defendant and is working hard to prevent both the spread of infection and the harm caused to inmates by infection.

Santa Rita Jail is divided into separate housing units ("HU"), which live separately from one another.  This means that an effective quarantine of a HU with COVID-19 infection may prevent the spread of infection to inmates in other HUs.  Therefore, the degree to which any given inmate in Santa Rita Jail is at increased risk as compared with a member of the general public who is sheltering-in-place depends in part on whether that inmate is or has been housed with other inmates who have tested positive or shown symptoms of COVID-19.

---

[1] Both inside and outside Santa Rita Jail, the true infection rate is currently unknown.  For example, a very recent preprint study by Stanford researchers and others measured the seroprevalence of antibodies to COVID-19 among 3,330 un-incarcerated residents of Santa Clara County and found evidence of 50-85 fold more infections than the number of confirmed cases.  *See* https://www.medrxiv.org/content/10.1101/2020.04.14.20062463v1.

An inmate in a HU in which another inmate or staff member has COVID-19 would unquestionably be at higher risk of contracting the virus than a member of the public who was abiding by the rules of the mandated shelter-in-place order and living with others who were abiding by the order. An inmate in a HU in which there have not been identified COVID-19 cases or symptoms, however, would be at considerably lesser risk of infection than an inmate in a HU in which COVID-19 has been found.

In this case, according to the Alameda County Sheriff's Department inmate locator, Defendant is housed is HU 04E. *See* https://www.acgov.org/sheriff_app/ (last visited April 20, 2020). As of April 20, 2020, HU 04E is not under quarantine or designated for inmates with known exposure to COVID-positive persons. *See* https://www.alamedacountysheriff.org/admin_covid19.php (last visited April 20, 2020). Therefore, although Santa Rita Jail poses some risks of infection inherent in any communal living environment, notwithstanding its comprehensive outbreak prevention plan and preventative measures, the government is not aware of any evidence that Defendant in particular has been or will be exposed to any COVID-positive person.

## C.   Factors Affecting Likelihood of Infection Outside Santa Rita Jail

Release to the community pending trial likewise presents a risk of COVID-19 infection. The relative risk of infection to Defendant if released depends on two case-specific factors: (1) Defendant's release plan, and (2) the likelihood that Defendant will follow that release plan.

Generally, plans that contemplate release to hygienic living situations in which a defendant can appropriately social distance will present less risk of infection than plans that contemplate release to unhygienic living situations or those in which a defendant cannot social distance. Another consideration is with whom a defendant proposes to live. A defendant who shelters-in-place with individuals who are themselves at high risk, such as healthcare workers, first responders, or persons who simply refuse to shelter-in-place, would be at relatively greater risk than a defendant who shelters-in-place with persons who are not themselves at high risk of infection.

However, even an optimal release plan will be for naught if a defendant cannot or will not abide by the conditions of release and, in fact, shelter-in-place. Any defendant who has previously been ordered detained has been found either to be a risk of non-appearance, a danger to the community, or

both.  *See* 18 U.S.C. § 3142(e)(1).  In many such cases, defendants who fall into this category have displayed previous inability or unwillingness to abide by laws, social norms, and court orders. Therefore, each case requires individualized assessment of both how well the defendant would be *able* to social distance if released *and* how likely it is that the defendant would follow legal directives do so.

In this case, Defendant's proposed plan was release to the private home and custody of two friends, one of whom is also Defendant's pastor.  Neither proposed custodian had an arrest history. Release to a private home in which there are only two other (apparently law-abiding) residents would give Defendant the *ability* to implement social distancing to a greater degree than incarceration in Santa Rita Jail.  If Defendant strictly abided by shelter-in-place and social distancing orders, Defendant very likely would be at lower risk of COVID-19 infection than if residing in Santa Rita Jail or any communal living environment.

However, several factors cast doubt on whether Defendant would abide by any conditions of release and, in fact, adhere to shelter-in-place and social distancing orders.  First, Defendant's criminal history, which spans essentially his entire adult life, strongly suggests that he has an inability or unwillingness to conform his behavior to laws, norms, and supervision conditions.

Second, as defense counsel conceded at the hearing on Defendant's Motion for Release on April 15, 2020, Defendant struggles with substance abuse.  Although defense counsel stated his belief that Defendant would be able to refrain from leaving the home to purchase drugs, addiction is complicated and difficult to predict.  Sheltering-in-place in close quarters with other persons is challenging and stressful and could lead Defendant to leave the home and seek controlled substances as a coping strategy.

Finally, as the government noted at the same hearing, the alleged conduct in this case shows a callous disregard for public safety, which gives the government serious doubt as to whether Defendant would consider either his own safety or that of others if released.  As discussed above, Defendant has a long and very serious criminal history including four prior felony convictions for assaults with firearms, deadly weapons, or force likely to cause great bodily injury.  Defendant has repeatedly engaged in violence against members of the community.  In this case, Defendant is alleged to have possessed a firearm in blatant disregard for the law and to have pointed that firearm directly at another person and

threatened him.  These facts are not only germane to why the government initially sought detention, the Court ordered detention, and the government opposed Defendant's subsequent motion for release.  They also inform the government's belief that Defendant would be unlikely to abide by release conditions or the shelter-in-place order.  Such brazen indifference to the safety of others belies a contention that, if released, Defendant would shelter-in-place as required.  If Defendant failed to do so, his own risk of infection would rise, as would the risk posed to his custodians and the community at large.

\* \* \*

Given the history and characteristics of this defendant, including his criminal history, drug use, violent conduct, and disregard for the safety of others, the government has serious doubts about whether Defendant would adhere to the shelter-in-place order.  Therefore, although an individual who strictly abided by shelter-in-place and social distancing orders would likely be at lower risk of COVID-19 infection than if residing in Santa Rita Jail or any communal living environment, it is impossible to say whether Defendant would be so positioned given his history and characteristics.

## II.   SUMMARY OF MOTIONS FOR RELEASE BASED ON COVID-19 FOLLOWING A CONTESTED HEARING AND DETENTION ORDER

The table below summarizes government counsel's compilation, to the best of his ability, of cases in the United States District Court for the Northern District of California in which a defendant moved for release during the current public health crisis following a contested detention hearing.  Thirty cases meet this criteria.  The government moved for continued detention in 29 of these cases based on a thorough, individualized application of the Bail Reform Act.  The court ordered that the defendant remain detained in 19 case, and one case remains pending.[2]

///
///
///

---

[2] Pursuant to the Court's order, this summary does not include cases in which there was a motion for release based on COVID-19 following an initially uncontested detention.  Motions were for release from pre-trial detention in criminal matters except where indicated.  In matters marked with an asterisk (*), defendant's motion was filed post-conviction and pre-sentencing.  In these matters, it is the defendant's burden to prove by clear and convincing evidence that he or she is not likely to flee and does not pose a danger to the safety of any person or the community if released.  18 U.S.C. § 3143(a).

| Defendant | Docket Number | Charges | Summary of Allegations | Gov. Position on Release at Reopened Hearing | Disposition |
|---|---|---|---|---|---|
| Batiste, Dominic | 19-CR-0421-CRB | Felon in possession of firearm or ammunition, 18 USC § 922(g)(1) | Defendant, on federal supervised release for being felon in possession of a firearm, hid a loaded gun under a 12-year-old cousin's bed during a parole search of his uncle's house. Dkt. 38 at 2-3. | Opposed, based on defendant's dangerousness and risk of non-appearance. | Detained |
| Bodner, Paul | 20-CR-0038-WHO | Travel with intent to engage in illicit sexual conduct, 18 USC § 2423(b); Engaging in illicit sexual conduct abroad, 18 USC § 2423(c) | Defendant repeatedly traveled to Vietnam for several years to engage in illicit sexual contact with minors, and tampered with victim-witnesses after learning of the federal investigation.  Dkt. 20 at 5. | Opposed, based on defendant's dangerousness. | Detained |
| Bryant, Jabari* | 18-CR-0036-WHO | Felon in possession of firearm or ammunition, 18 USC § 922(g)(1) | Defendant pleaded guilty to illegally possessing a firearm and ammunition and was convicted of new state property crimes while awaiting sentencing.  Dkt. 40 at 3. | Opposed, based on defendant's dangerousness | Detained |
| Cazarez, Michael | 18-CR-0466-BLF | Racketeering conspiracy, 18 USC § 1962(d); Conspiracy to commit murder in aid of racketeering, 18 USC § 1959(a)(5) | Member of Norteno street gang with history of attempted murder, assault, and drug trafficking attempted to murder another inmate while in jail.  Dkt. 330 at 5. | Opposed, based on defendant's dangerousness | Released[3] |

---

[3] The government's appeal to the district court is pending as of April 20, 2020.

| Coats, Jamare | 19-CR-0313-WHA | Use of firearm in furtherance of crime of violence resulting in death, 18 U.S.C. §§ 924(j)(1), (2); Felon in possession of firearm or ammunition, 18 USC § 922(g)(1) | Defendant was a convicted felon and member of Mac Block street gang charged with using a firearm to murder an individual. Dkt. 30 at 6-9. | Opposed, based on defendant's dangerousness | Detained |
|---|---|---|---|---|---|
| Cole, Joshua | 19-CR-0439-YRG | Felon in possession of firearm or ammunition, 18 USC § 922(g)(1) | Defendant, a member of the Case gang with a history of firearms convictions, possessed a stolen firearm with a loaded extended magazine.  Dkt. 39 at 4-5. | Opposed, based on defendant's dangerousness | Released |
| Daniels, Jeremy | 19-CR-0709-LHK | Felon in possession of firearm or ammunition, 18 USC § 922(g)(1) | Crip gang member with lengthy criminal history, including violent crimes and weapons charges, was arrested for possessing a handgun and ammunition after fleeing from police during a traffic stop. Dkt. 21 at 2-4. | Opposed, based on defendant's dangerousness | Released |
| Dunn, Owen* | 19-CR-0436-WHA | 21 USC § 841(a)(1)/(b)(1)(C); Felon in possession of firearm or ammunition, 18 USC § 922(g)(1) | Defendant, with prior felony convictions including unlawful sex act with a minor, domestic violence, felon-in-possession of a firearm, and drug distribution, has again been convicted of distributing controlled substances and possessing a firearm. Dkt. 32 at 2. | Opposed, based on defendant's dangerousness and risk of non-appearance | Pending |

| Ellis, Dornell | 05-CR-0167-WHA | Supervised release violation: Domestic battery, Cal. Penal Code § 243(e)(1); Assault with a deadly weapon, Cal. Penal Code § 245(a)(1) | While on supervised release for a conviction relating to his involvement in murder and other violent crimes by the Down Below Gangsters street gang, defendant assaulted his girlfriend and another individual. Dkt. 1962 at 2-4. | Opposed, based on defendant's dangerousness | Detained |
| Farca, Ross | 19-CR-0643-JST | False statement to government agency, 18 USC § 1001(a)(2) | Defendant falsely claimed he did not have mental health issues in order to enlist in the army, in which he was arrested for assaulting another trainee and discharged.  He also made violent online anti-Semitic postings inspired by recent domestic terrorists. Dkt. 32 at 3-4. | Opposed, based on defendant's dangerousness | Detained |
| Garcha, Sandeep | 19-CR-0663-EJD-1 | Felon in possession of firearm or ammunition, 18 USC § 922(g)(1) | Defendant, previously convicted of carjacking, kidnapping, and robbery, possessed a loaded handgun.  Dkt. 22 at 2-3. | Opposed, based on defendant's dangerousness and risk of non-appearance | Released |

| Garcia, David[4] | 20-CR-0080-BLF | Conspiracy to distribute methamphetamine, 21 USC §§ 846, 841(a) / (b)(1)(C); Possession with intent to distribute and distribution of 500 grams and more of a mixture containing methamphetamine, 21 USC §§ 841(a) / (b)(1)(A) | Defendant engaged in a conspiracy to sell at least several pounds of methamphetamine. Dkt. 1 at 5-6. | Opposed, based on risk of defendant's non-appearance | Released |
|---|---|---|---|---|---|
| Gerrans, Lawrence*[5] | 18-CR-0310-EMC | Wire fraud, 18 USC § 1343; Money laundering, 18 USC § 1957 | Defendant abused his positions of authority to perpetrate an elaborate fraud scheme.  Dkt. 1 at 5-8.  He also conspired to harm the prosecutor assigned to his case. Dkt. 207 at 3. | Opposed, based on defendant's dangerousness | Detained |
| Frank, Joe | 19-CR-43-YGR | Conspiracy to possess with intent to distribute and to distribute cocaine and cocaine base, 21 USC §§ 846, 841(a)(1) / (b)(1)(B) | While on supervised release for using a firearm in furtherance of a drug trafficking offense, defendant engaged in a conspiracy to traffic cocaine and cocaine base.  Dkt. 224 at 2. | Opposed, based on defendant's dangerousness and risk of non-appearance | Detained |

---

[4] This defendant initially waived findings regarding detention but only after hearing the magistrate's indicated intent to detain.  The government includes this matter in an abundance of caution.

[5] This defendant is not detained in Santa Rita Jail.

| | | | | | |
|---|---|---|---|---|---|
| Kramer, Fritz* | 16-CR-0322-EJD | Wire fraud, 18 USC § 1343; Commodities fraud, 18 USC § 1348 | Defendant has been convicted on twelve fraud charges for orchestrating a gold and diamond export scheme that lasted seven years and stretched across five continents.  Dkt. 350 at 5. | Opposed, based on defendant's dangerousness and risk of non-appearance | Detained |
| Man, Raya | 20-CR-0068-CRB | Felon in possession of firearm or ammunition / Three prior violent felonies; 18 USC §§ 922(g)(1)/924(e) | Defendant, previously convicted of four violent felonies, pointed a loaded handgun at the victim and threatened him in a crowded bar.  Dkt. 24 at 1. | Opposed, based on defendant's dangerousness | Detained |
| Manrique, Alejandro[6] | 19-mj-71055-MAG-1 | Extradition | Defendant, subject to an extradition request, had falsely represented a lack of available funds to the court while concealing over $1 million in assets.  Dkt. 113 at 2-3. | Opposed, based on risk of defendant's non-appearance | Released |
| Mazariegos, Alexander | 20-CR-0003-EMC | Illegal reentry following removal, 8 USC § 1326(a) | Defendant, who has multiple prior deportations and a history of stalking and domestic violence towards the mother of his child, previously cut off his court-ordered electronic monitoring device.  Dkt. 20 at 1-2. | Opposed, based on defendant's dangerousness and risk of non-appearance | Detained |

---

[6] This extradition matter is included in an abundance of caution.

| McCoy, Daniel* | 09-CR-0337-JD; 19-CR-0067-JD | Possession with intent to distribute methamphetamine, 21 USC §§ 841(a)(1) / (b)(1)(C) | While on supervised release for being a felon in possession of a firearm and possessing cocaine base with intent to distribute it, defendant was selling methamphetamine on the street while in possession of numerous other controlled substances. Dkt. 92 at 5-6. | Opposed, based on defendant's dangerousness and risk of non-appearance | Released |
| Parmer, Richard | 18-CR-0267-RS | Distribution of child pornography, 18 USC § 2252(a)(2); Possession of child pornography, 18 USC § 2252(a)(4)(B) | Defendant, who has a prior conviction for a hands-on sexual assault of a minor by force or threat of force, uploaded to a peer-to-peer file sharing service hundreds of files showing minors engaged in sexually explicit conduct.  Dkt. 120 at 5-6. | Opposed, based on defendant's dangerousness | Released |
| Phillips, Jeffrey | 20-CR-0099-JST | Distribution of child pornography, 18 USC § 2252(a)(2); Possession of child pornography, 18 USC § 2252(a)(4)(B) | Defendant sent an undercover officer a video showing a prepubescent female engaged in sexually explicit conduct and described to the officer sexual conduct he had with a minor female.  Dkt. 27 at 7. | Opposed, based on defendant's dangerousness | Detained |
| Ramos Jr., Ray* | 19-CR-0187-EJD | Possession with intent to distribute cocaine, 21 USC § 841(a)(1) / (b)(1)(C) | During execution of search warrant at defendant's home, police found over twenty firearms, ammunition, and cocaine.  Dkt. 23 at 1-2. | No position, based on defendant's health profile and release plan. | Temporarily released |

| | | | | | |
|---|---|---|---|---|---|
| Rubin, Lembrent | 18-CR-0568-CRB | Interference with interstate commerce by robbery, 18 USC § 1951(a); Brandishing a firearm in furtherance of a crime of violence, 18 USC § 924(c) | Brandished, carried, or used a firearm to rob a San Francisco pharmacy of controlled substances. Dkt. 1 at 4-5. | Opposed, based on defendant's dangerousness | Detained |
| Saliba, Christopher | 20-CR-0041-RS; 16-CR-0109-RS | Felon in possession of firearm or ammunition, 18 USC § 922(g)(1) | Defendant was found in public in possession of a loaded semi-automatic handgun, methamphetamine, and almost $3,000 in cash. Dkt. 21 at 1. | Opposed, based on defendant's dangerousness and risk of non-appearance | Detained |
| Sanchez, Miguel | 19-CR-0576-VC | Possession with intent to distribute cocaine, 21 USC §§ 841(a)(1) / (b)(1)(B); Felon in possession of firearm or ammunition,18 USC § 922(g)(1) | During execution of search warrant at defendant's home, police found a loaded handgun and over two pounds of cocaine. Dkt. 22 at 1. | Opposed, based on defendant's dangerousness and risk of non-appearance | Detained |
| Traore, Mustapha* | 20-CR-0029-VC | False statement in application for passport, 18 USC 1542 | Defendant engaged in decades-long use of fake identities and took steps to flee the United States following his involvement in a murder as an accessory.  Dkt. 26 at 2, 4-5. | Opposed, based on risk of defendant's non-appearance | Detained |

| Trujillo, Armando | 20-CR-0028-EJD | Felon in possession of firearm or ammunition 18 USC § 922(g)(1) | Felon with 25-year criminal history and convictions for crimes of violence as recent as 2008 and 2011 possessed a loaded semi-automatic handgun.  Dkt. 12 at 3. | Opposed, based on defendant's dangerousness and risk of non-appearance | Temporarily released[7] |
| Walsh, Trevor* | 19-CR-0232-WHA | Possession of machineguns, 18 USC § 922(o) | A search of defendant's residence revealed two machineguns, ammunition, silencers, drugs, and drug paraphernalia.  Dkt. 42 at 2-3. | Opposed, based on defendant's dangerousness and risk of non-appearance | Detained[8] |
| Lara-Vargas, Ysauro | 16-CR-0264-LHK | Illegal reentry following removal, 8 USC § 1326(a) | Defendant is a previous deportee with convictions for robbery and assault with a deadly weapon, with a gang enhancement.  Dkt. 18 at 2-3. | Opposed, based on defendant's dangerousness and risk of non-appearance | Detained |
| Washington, Darryl | 19-CR-0043-YGR | Conspiracy to distribute 280 grams or more of cocaine base, 21 USC §§ 846, 841(a)/(b)(1)(A); Possession of a machine gun, 18 USC § 922(o); Felon in possession of a firearm or ammunition; § 18 USC 922(g)(1) | Defendant was a shift-leader in an open-air drug market and sold a machinegun to an informant.  Dkt. 212 at 3. | Opposed, based on defendant's dangerousness | Detained |

---

[7] The magistrate denied the motion for release, and the district court reversed in part, ordering a 60-day temporary release but not overturning the detention order.

[8] Following his sentencing, defendant filed a second, further motion for release, which is pending.

1    DATED:  April 20, 2020                      Respectfully submitted,

2                                          DAVID L. ANDERSON

3                                          United States Attorney

4

5                                  _____/s/_____

6                                          RICHARD EWENSTEIN

Assistant United States Attorney